IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| OMAHA PROPERTY MANAGER, LLC, | ) |
| Plaintiff, | ) Civil Action No. 22-cv-001623-LKG |
| v. | ) Dated:  October 18, 2024 |
| KAMAL MUSTAFA, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

## I. INTRODUCTION

The Plaintiff, Omaha Property Manager, LLC ("Delaware Omaha"), has filed: (1) a memorandum in support of its bill of costs for contempt motion and action for injunctive relief (the "Bill of Costs"), pursuant to Local Rule 109.1(b) and (2) a motion to deem the allegations in the verified complaint admitted by the Defendants, pursuant to Fed. R. Civ. P. 8. ECF Nos. 93, 160. These matters are fully briefed. ECF Nos. 93, 97, 102, 147, 148, 150, 155, 160, 161 and 162. No hearing is necessary to resolve the matters. *See* L.R. 106.5 (D. Md. 2023). For the reasons that follow, the Court: (1) **GRANTS** Delaware Omaha's motion to deem the allegations in the verified complaint admitted by the Defendants and (2) **AWARDS** Delaware Omaha attorneys' fees and costs in the amount of **$38,753.00** and lost profits in the amount of **$38,888.12**.

## II. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. FACTUAL BACKGROUND

In this case, Plaintiff Delaware Omaha brings claims for injunctive and other relief against the Defendants, Kamal Mustafa; Sidikatu Raji; Omaha Property Manager, LLC, a Maryland limited liability company ("Maryland Omaha"); Omaha Property Manager, LLC, an Illinois limited liability company ("Illinois Omaha"); and NDF1, LLC ("NDF1"), a Maryland

---

[1] The facts recited in this memorandum opinion are derived from the complaint; Delaware Omaha's Bill Of Costs; the exhibits thereto; and Delaware Omaha's motion to have the allegations in the complaint deemed admitted. ECF Nos. 2, 93 and 160. Unless otherwise stated herein, the facts are undisputed.

limited liability company, arising from the Defendants' fraudulent attempts to purchase and sell several properties owned by Delaware Omaha. *See generally* ECF No. 2.

Delaware Omaha commenced this case in the Circuit Court of Montgomery County, Maryland on June 28, 2022. ECF No. 1 at 1. On July 1, 2022, Defendant Mustafa removed the case to this Court. *See generally id.*

<u>Delaware Omaha's Allegations</u>

A detailed factual background for the case is set forth in the Court's February 24, 2023, memorandum opinion in this matter. ECF No. 73. Relevant to the pending matters, Delaware Omaha alleges that, on or about November 24, 2021, Defendant Mustafa, as the President of Defendants Maryland Omaha and Illinois Omaha, executed a fraudulent deed purporting to transfer ownership of a property owned by Delaware Omaha that is located at 14611 Bubbling Spring Road, Boyds, Maryland (the "Bubbling Spring Property") to Defendant NDF1. *Id.* at ¶¶ 19-23, 26. Delaware Omaha also alleges that, since the alleged fraudulent conveyance of the Bubbling Spring Property, Defendants Mustafa, Maryland Omaha and Illinois Omaha have continued to falsely represent that NDF1 owns this property. *Id.* at ¶ 30.

Delaware Omaha further alleges that the Defendants have executed additional fraudulent deeds purporting to transfer ownership of other properties owned by Delaware Omaha to Defendant NDF1, including a property located at 1537 Havilland Place, Frederick, Maryland (the "Havilland Property") and a property located at 5516 Vantage Point Road, Columbia, Maryland (the "Vantage Point Property"). *Id.* at ¶¶ 36, 40-42, 46-49. In addition, Delaware Omaha alleges that Defendants Mustafa and Raji have attempted to harass and intimidate Delaware Omaha and its employees, by leveraging the fraudulent deeds and making false claims regarding NDF1's ownership of these properties. *Id.* at ¶¶ 50-56.

Lastly, Delaware Omaha alleges that, in May 2022, the Defendants also attempted to sell a property that it owned which is located at 4800 Hamilton Street, Hyattsville, Maryland (the "Hamilton Street Property"). *Id.* at ¶¶ 63-69. And so, Delaware Omaha seeks to enjoin the Defendants from taking certain actions related to these properties and to recover compensatory and punitive damages, costs, expenses and attorneys' fees from the Defendants. *Id.* at Prayer for Relief.

On May 22, 2024, the Defendants filed identical answers to Delaware Omaha's complaint. ECF Nos. 152, 153, 154. In their answers, the Defendants do not admit or deny any

of the factual allegations set forth in the complaint. *See* ECF Nos. 152, 153, and 154. But the Defendants also assert an affirmative defense challenging the Court's subject-matter jurisdiction to consider this matter. *See* ECF No. 152 at 1-2, 6; ECF No. 153 at 1-2, 6; ECF No. 154 at 1-2, 6.

The Court's Temporary Restraining Order And The Bill Of Costs

On July 8, 2022, Delaware Omaha moved for a temporary restraining order ("TRO") to enjoin the Defendants from taking certain actions related to the properties "lawfully owned by Delaware Omaha" and award it all costs, attorneys' fees and expenses associated with its action for the injunction. ECF No. 10. On July 13, 2022, the Court granted the TRO and ordered that the Defendants: (1) "are enjoined from filing any fraudulent deeds asserting ownership or transfer or ownership relating to properties that are lawfully owned by Delaware Omaha;" (2) "are enjoined from making any public misrepresentations that Defendants have any interest in the properties lawfully owned by Delaware Omaha;" (3) "are enjoined from entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha;" (4) "are enjoined from listing any of the properties lawfully owned by Delaware Omaha for sale;" (5) "must make all efforts necessary to ensure that any such listings are removed from public websites;" and (6) "are enjoined from renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha." ECF No. 17 at 1.

Thereafter, Delaware Omaha filed a motion to hold Defendant NDF1 in contempt, for an award of legal fees and to impose sanctions on Defendant NDF1, on August 5, 2022. ECF No. 27. On August 19, 2022, the Court issued a preliminary injunction in favor of Delaware Omaha, which provided the same relief as the TRO in all material respects, except that the preliminary injunction also pertains to Defendant Mustafa. ECF No. 33. On September 2, 2022, Delaware Omaha filed a supplemental motion to find the Defendants in contempt. ECF No. 37.

On February 24, 2023, the Court issued a memorandum opinion and an order, which granted: (1) Delaware Omaha's motion to find Defendant NDF1 in contempt, for an award of legal fees and to impose sanctions (ECF No. 27) and (2) Delaware Omaha's supplemental motion to find the Defendants in contempt (ECF No. 37) (the "February 24, 2023, Decision"). ECF No. 73. In the February 24, 2023, Decision, the Court, among other things, determined that Delaware Omaha is entitled to recover lost profits, attorneys' fees and costs from the Defendants, because "the Defendants have directly defied the Court's order, not once, but twice, on two

separate occasions, once after the Court issued its [temporary restraining order] and again after the Court issued the preliminary injunction." *Id.* at 9.  And so, the Court awarded "appropriate attorneys' fees and costs associated with filing the contempt motion, the supplementary motion, and the action for injunctive relief" and directed Delaware Omaha to "file with the Court documentation so the Court may determine an appropriate award" and "show how much profits they have lost due to Defendants actions." *Id*.

On April 19, 2023, Delaware Omaha filed the Bill of Costs, which seeks an award of legal costs and attorneys' fees in the amount of $38,753.00 and lost profits in the amount of $38,888.12.  ECF No. 93 at 3-4.  In support of this request, Delaware Omaha has submitted: (1) a redacted version of its legal bills for this matter, for the period from June 2022 to January 2023; (2) a chart containing all time entries associated with this matter for two attorneys, Timothy M. Hurley, Esq. and Emmit M. Kellar, Esq., for the period from June 2022 to January 2023; and (3) the affidavit of Lori Samuels, the Vice President and Assistant Secretary of Delaware Omaha (the "Samuels Affidavit") and certain exhibits thereto.  ECF Nos. 93-1, 93-2, 93-3.

In the Bill of Costs, Delaware Omaha represents to the Court that its monthly legal costs and attorneys' fees related to the action against the Defendants for injunctive relief are as shown in the table below:

| Month | Total |
|---|---:|
| June 2022 | $8,197.00 |
| July 2022 | $10,441.50 |
| August 2022 | $9,741.50 |
| September 2022 | $2,158.50 |
| October 2022 | $2,733.50 |
| November 2022 | $2,697.00 |
| December 2022 | $2,288.50 |
| January 2023 | $495.50 |
| February 2023 (partial) | $0.00 |
| **GRAND TOTAL** | **$38,753.00** |

ECF No. 93 at 3.  In this regard, Ms. Samuels states in her affidavit that:

> Pursuant to 28 U.S.C. § 1924 and Local Rule 109.1(b), I hereby verify the fees and costs identified [the Bill of Costs] are correct and were necessarily incurred by Delaware Omaha in the above-captioned case.
>
> I further testify that it is Delaware Omaha's understanding that these costs were awarded to Delaware Omaha as a sanction for

> Defendants' contemptuous actions in this Court's Memorandum Opinion dated February 24, 2023. *See* ECF No. 73.
>
> I further verify that the hourly rates of Timothy M. Hurley ($355.00/hour) and Emmit F. Kellar ($265.00/hour) are within the range of fees that are customary for attorneys of their industry and respective experience as prescribed by Appendix B.3 of this Court's Local Rules. Mr. Hurley has been barred since 2006 and Mr. Kellar has been barred since 2016.
>
> I further verify that the services for which the fees and costs have been charged were actually and necessarily performed.

ECF No. 93-3 at ¶¶ 2-5. And so, Delaware Omaha seeks to recover attorneys' fees and costs from the Defendants in the amount of $38,753.00. ECF No. 93 at 3-4.

The Bill of Costs also seeks an award of lost profits related to the Defendants' unauthorized rental of the Havilland Property and Delaware Omaha represents to the Court that the monthly costs that it has incurred for the Havilland Property are as shown in the table below:

| | |
|---|---|
| **Rent** | $2,300.00 |
| **Taxes** | $359.11 |
| **Insurance** | $186.06 |
| **Heating/Electric** | $573.40 |
| **Water/Sewer** | $67.59 |
| **Servicing Fee** | $65.00 |
| **Property Preservation (Landscaping, snow removal, etc.)** | $300.00 |
| **TOTAL MONTHLY EXPENSES** | $3,851.16 |

*Id*. Delaware Omaha also states that it has incurred additional costs associated with removing the "unauthorized tenants installed by Defendants from the Havilland Property." *Id.* at 5. These additional costs are shown in the table below:

| | |
|---|---|
| **Monthly Expenses (x 7 months)** | $26,958.12 |
| **Repair for Rental** | $11,585.00 |
| **Changes Locks/Rekey** | $345.00 |
| **TOTAL LOST PROFITS** | **$38,888.12** |

*Id.* at 5.

> In this regard, Ms. Samuels explains that:
>
> Rent: $2,300.00 in monthly rent for the Havilland Property represents a conservative broker opinion of market rent provided by Jennifer Young of Keller Williams Realty, which is attached hereto as Exhibit 1. Ms. Young has personally visited the Havilland Property and is familiar with its interior and exterior conditions.

5

> Taxes: the $359.11 in taxes represents the monthly amount of property taxes charged by the State of Maryland against the Havilland Property during the time Delaware Omaha was unable to rent or sell the Property. Defendants' contemptuous activity began in July 2022, at which time the annual amount of property tax for the Havilland Property was $4,309.32. Delaware Omaha typically divides this amount by twelve and includes that amount among the monthly rental charges to its tenants. A copy of the Frederick County Real Estate Taxes and Fees that were due and owing in July 2022 are attached hereto as Exhibit 2.
>
> Insurance: the $186.06 represents the monthly cost for property insurance for the Havilland Property. Delaware Omaha includes this cost in the monthly rental charges to its tenants.
>
> Heating/Electric: the $573.40 represents the average monthly cost for providing heating, air conditioning, and electricity to the Havilland Property during the months when the Defendants' actions precluded Delaware Omaha from renting or selling the property. Delaware Omaha's tenants are normally responsible for this cost. These costs were likewise largely incurred by the unauthorized tenants that Defendants installed in the Havilland Property.
>
> Water/Sewer: the $67.59 represents the average monthly water and sewage bill for the Havilland Property during the months when the Defendants' actions precluded Delaware Omaha from renting or selling the property. Delaware Omaha's tenants are normally responsible for this cost. These costs were likewise largely incurred by the unauthorized tenants that Defendants[] installed in the Havilland Property.
>
> Servicing Fee: the $65.00 servicing fee represents the monthly cost for Delaware Omaha to process and pay all of the bills and costs associated with the Havilland Property on behalf of the tenant. Delaware Omaha includes this cost in the monthly rental charges to its tenants.
>
> Property Preservation (Landscaping, snow removal, etc.): $300 represents the monthly costs to maintain the outside portion of the Havilland Property. Delaware Omaha typically provides these services for their tenants, which the tenants than pay for as part of their monthly rental fees.

*Id.* at ¶ 8. Lastly, Ms. Samuels further explains that:

> Delaware Omaha's lost profit calculations include seven months' worth of the fees stated above, which is based on the fact that Defendants' contemptuous actions toward the Havilland Property began in July 2022 and continued into February 2023. During this

> time, Delaware Omaha was unable to rent or sell the Havilland Property.
>
> In addition to the monthly fees stated above, Delaware Omaha was also forced to incur additional fees to remediate the Havilland Property after it was abandoned by Defendants' unauthorized tenants.
>
> Specifically, Delaware Omaha had to incur $11,585.00 in clean up fees, which are specifically outlined in the March 6, 2023 Stoney Construction & Service Corp. invoice attached here to as Exhibit 3.
>
> Likewise, Delaware Omaha was forced to change and rekey the locks on the Havilland Property, which cost $345.00 and is likewise outlined in the March 6, 2023 Stoney Construction & Service Corp. invoice attached hereto as Exhibit 4.

*Id.* at ¶¶ 9-12. And so, Delaware Omaha also seeks to recover lost profits in the amount of $38,888.12. ECF No. 93 at 4-5.

### B. RELEVANT PROCEDURAL BACKGROUND

On April 19, 2023, Delaware Omaha filed the Bill of Costs. ECF No. 93. Defendant Mustafa filed a response in opposition to the Bill of Costs on April 28, 2023. ECF No. 97. Delaware Omaha filed a reply brief on May 8, 2023. ECF No. 102.

The Defendants filed supplemental responses in opposition to Delaware Omaha's Bill of Costs on May 12, 2024, and May 15, 2024, respectively. ECF Nos. 147, 148, 150. On May 28, 2024, Delaware Omaha filed a supplemental reply in support of its Bill Of Costs. ECF No. 155.

On June 21, 2024, Delaware Omaha filed a motion to deem the allegations in the verified complaint admitted by the Defendants. ECF No. 160. On July 8, 2024, Defendant Mustafa filed a document entitled "defendants' response in opposition (ECF #159) amended answer to complaint (supplement to ECF 154)" and Defendants Maryland Omaha, Illinois Omaha and NDF1 filed an essentially identical document entitled "defendants' response in opposition (ECF #159) amended answer to complaint (supplement to ECF 152) point-by-point rebuttal." ECF Nos. 161, 162.

These matters having been fully briefed, the Court resolves the pending Bill of Costs and motion.

### III. STANDARDS OF DECISION

#### A. *Pro Se* Litigants And Fed. R. Civ. P. 8

Defendants Mustafa and Raji are proceeding in this matter without the assistance of counsel. And so, the Court must construe their filings liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[a] document filed *pro se* is "to be liberally construed . . . "). Relevant to the pending motion to deem allegations admitted, Rule 8 of the Federal Rules of Civil Procedure provides that "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6); *see also United States v. Wright*, 87 F. Supp. 2d 464, 465 (D. Md. 2000) ("[a]llegations made in a [c]omplaint that are not denied by an answer are admitted . . . . [s]ince Wright did not dispute execution in her answer, she cannot be heard to allowed to argue it in later proceedings.").

#### B. Attorney's Fees

The Fourth Circuit has explained that "[t]here are two main methods for calculating the reasonableness of attorney's fees—the lodestar method and the percentage-of-recovery method"—and that a "district court may choose the method it deems appropriate based on its judgment and the facts of the case." *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022). The lodestar amount is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012) (quoting *Grissom v. The Mills Corp.*, 549 F. 3d 313, 320–21 (4th Cir. 2008); *Plyler v. Evatt*, 902 F. 2d 273, 277 (4th Cir. 1990)) (quotations omitted); *see also De La Cruz v. Chopra, et al.*, 2018 WL 2298717, at *2 (D. Md. May 21, 2018) (citations omitted) (noting that the lodestar method "multiplies the number of hours reasonably expended by a reasonable hourly rate."). The Court's Local Rules also provide presumptively reasonable rates for attorney's fees. *See* L.R. Appendix B.3 (2023).

#### C. Bill Of Costs

Lastly, Local Rule 109 provides, in relevant part, that "unless . . . otherwise ordered by the Court, a bill of costs shall be filed within fourteen (14) days of the expiration of time allowed for appeal of a final judgment or, if a notice of appeal is filed, within fourteen (14) days of the issuance of the mandate by the Court of Appeals." L.R. 109.1(a). "In any case where any costs

other than the fee for filing the action are being requested, the bill of costs shall be supported by affidavit and accompanied by a memorandum setting forth the grounds and authorities supporting the request." L.R. 109.1(b).  Any vouchers or bills supporting the costs being requested shall be attached as exhibits to the bill of costs.  *Id.*

### IV.  ANALYSIS

Delaware Omaha has two matters before the Court that are ripe for resolution.

First, in its motion to deem the allegations in the verified complaint admitted by the Defendants, Delaware Omaha argues that the allegations in the complaint should be deemed admitted by the Defendants, pursuant to Fed. R. Civ. P. 8(b)(6), because the Defendants fail to admit or deny any of these allegations in their respective answers filed on May 22, 2024. *See generally* ECF No. 160.  The Defendants counter that their answers sufficiently respond to the allegations in the complaint, and they also attempt to file amended answers with their responses in opposition to Delaware Omaha's motion.  *See* ECF Nos. 161, 162.  And so, the Defendants request that the Court deny Delaware Omaha's motion.  *Id.*

Second, Delaware Omaha has filed a Bill of Costs seeking to recover attorneys' fees and costs in the amount of $38,753.00 and lost profits in the amount of $38,888.12, arising from its action for injunctive relief, pursuant to Local Rule 109.  *See generally* ECF No. 93.  In their responses in opposition to the Bill of Costs, the Defendants argue that Delaware Omaha is not entitled to these costs and fees, because: (1) the Court lacks subject-matter jurisdiction to consider this matter; (2) the *Rooker-Feldman* doctrine precludes the Court from considering this matter; (3) Delaware Omaha has already received default judgments against the Defendants in the Maryland state court related to the properties at issue; (4) the invoices submitted in support of the Bill of Costs are addressed to Fay Servicing, LLC, instead of Delaware Omaha; and (5) Delaware Omaha is not registered or licensed as a business in the state of Maryland.  *See* ECF Nos. 97, 147, 148, 150.  And so, the Defendants request that the Court not award the costs and fees requested in the Bill of Costs.  *Id.*

For the reasons stated below, a careful reading of the complaint and the answers filed by the Defendants on May 22, 2024, makes clear that the Defendants have neither admitted nor denied the allegations contained in the complaint.  A careful review of Delaware Omaha's Bill of Costs, and the billing records and other information provided in support of the Bill of Costs, also makes clear that Delaware Omaha has shown that it is entitled to recover the attorneys' fees,

9

costs and lost profits that it seeks in this matter.  And so, the Court: (1) GRANTS Delaware Omaha's motion to deem the allegations in the verified complaint admitted by the Defendants and (2) AWARDS Delaware Omaha attorneys' fees and costs in the amount of **$38,753.00** and lost profits in the amount of **$38,888.12**.

### A. The Court May Consider This Matter

As an initial matter, the Court is satisfied that it may resolve the pending motion and Bill of Costs.  The Defendants argue that the Court lacks subject-matter jurisdiction to consider this matter, because there is not complete diversity among Plaintiff and all Defendants in this matter.  *See* ECF Nos. 97, 147, 148 and 150.  But, the pleadings in this case make clear that Delaware Omaha is a Delaware limited liability company and the Defendants are all residents of either Maryland or Illinois.  ECF No. 2 at ¶¶ 1-6.  Given this, there is complete diversity among the parties.  *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citation omitted) (explaining that "the 'complete diversity' rule . . . permits jurisdiction only when no party shares common citizenship with any party on the other side.").

The Defendants also argue without persuasion that the *Rooker-Feldman* precludes the Court from considering this matter, because this doctrine is not applicable to this dispute.  While this case and Delaware Omaha's state cases are related, the Court's determination of whether to award the injunctive relief that Delaware Omaha seeks in this case does not require the Court to review any judgments that have been issued by the Circuit Court of Montgomery County in connection with Delaware Omaha's state-court quiet title actions.  *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (holding that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.").  And so, it is appropriate for the Court to resolve Delaware Omaha's motion and Bill of Costs.

### B. The Factual Allegations In The Complaint Are Deemed Admitted

Turning to the merits of Delaware Omaha's motion to deem the allegations in the verified complaint admitted, a plain reading of the Defendants' respective answers to the complaint makes clear that they have not denied the specific factual allegations set forth in the complaint.  Pursuant to Fed. R. Civ. P. 8, "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6); *see also, e.g.*, *United States v. Wright*, 87 F. Supp. 2d 464, 465 (D. Md. 2000) ("[a]llegations made in a [c]omplaint that are not denied by an [a]nswer are admitted . . . . [s]ince

Wright did not dispute execution in her answer, she cannot be heard to allowed to argue it in later proceedings."). In this case, the Defendants filed essentially identical answers to the complaint on May 22, 2024. ECF Nos. 152, 153, 154. But these responsive pleadings make clear that the Defendants did not deny any of the specific allegations set forth in the complaint. *See* ECF Nos. 152, 153, 154. The Defendants have, subsequently, attempted to included so-called "amended answers to the complaint" in their respective responses in opposition to Delaware Omaha's motion, *See* ECF Nos. 161 and 162. But these filings are not responsive pleadings as required by Rule 8.

The Court is cognizant of the fact that some Defendants in this matter are proceeding *pro se* in this litigation. But, the Defendants' *pro se* status does not relieve them of the obligation to comply with the pleading requirements under the Federal Rules of Civil Procedure. The Court also observes that the Defendants have repeatedly demonstrated their ability to file responsive pleadings and motion papers during the course of this litigation. Given this, the Court will not excuse the Defendants failure to satisfy the clear requirements of Rule 8. And so, the Court GRANTS Delaware Omaha's motion to deem the allegations in the verified complaint admitted by the Defendants and DEEMS the allegations in the complaint admitted by the Defendants. Fed. R. Civ. P. 8.

### C. The Court Awards Delaware Omaha's Requested Fees And Costs

For the reasons that follow, the Court is also satisfied that Delaware Omaha is entitled to the attorneys' fees, costs and lost profits that it seeks in the Bill of Costs.

First, with regards to Delaware Omaha's requested attorneys' fees and costs, Delaware Omaha seeks to recover $38,753.00 in attorneys' fees and costs from the Defendants arising from its contempt motion and action for injunctive relief. ECF No. 93 at 3. The Court is satisfied that the amount of attorneys' fees and costs sought is reasonable.

The Bill of Costs and the supporting sworn affidavit of Lori Samuels show that the attorneys' fees and legal costs sought by Delaware Omaha are for work performed by its attorneys in connection with its contempt motion and action for injunctive relief, during the period from June 2022 to January 2023. *See* ECF Nos. 93, 93-3. In this regard, the attorney billing records provided by Delaware Omaha show that its two attorneys, Timothy Hurley, Esq. and Emmit F. Kellar, Esq., billed at hourly rates of $355.00 and $265.00, respectively, while

performing this work. ECF No. 93-1 at 9, 19, 29, 35, 43, 55, 61, 66; ECF No. 93-2. Mr. Hurley has 18 years of legal experience and Mr. Kellar has eight years of legal experience. *See* Nelson Mullins Riley & Scarborough LLP, *Timothy M. Hurley* https://www.nelsonmullins.com/professionals/timothy-hurley#main (last visited Oct. 18, 2024); Nelson Mullins Riley & Scarborough LLP, *Emmit F. Kellar* https://www.nelsonmullins.com/professionals/emmit-kellar#main (last visited Oct. 18, 2024). And so, their respective hourly billing rates fall within the range of hourly billing rates that the Court's Local Rules provide are presumptively reasonable. *See* L.R. Appendix B.3 (2023).

Delaware Omaha has also shown that the number of attorney hours billed is reasonable, given the nature of this litigation. The provided billing invoices and time entries show that Mr. Hurley spent approximately 132.8 hours, and Mr. Kellar spent approximately 222.2 hours, performing legal work related to the Delaware Omaha's motion for contempt and action for injunctive relief during the six-month period between June 2022 and January 2023.[2] *See* ECF No. 93-2. In addition, Delaware Omaha has shown that the other legal costs that it seeks were incurred in connection with these legal services.[3] ECF No. 93-1. And so, Delaware Omaha has shown that it incurred attorneys' fees and costs the amount of $38,753.00 for these legal services.

Because Delaware Omaha has shown that it is entitled to an award of the attorneys' fees and costs that it seeks in the Bill of Costs, the Court AWARDS Delaware Omaha attorneys' fees and costs in the amount of $38,753.00.

As a final matter, Delaware Omaha has also shown that it is entitled to recover lost profits from the Defendants in the amount of $38,888.12, for the unauthorized rental of the Havilland Property and related costs. In the Court's February 24, 2023, Decision, the Court determined that, among other things, Delaware Omaha is entitled to recover lost profits from the Defendants arising from its contempt motion and action for injunction, because "the Defendants

---

[2] Ms. Samuels states in her affidavit that "the fees and costs identified in Delaware Omaha's Bill of Costs are correct and were necessarily incurred by Delaware Omaha in the above-captioned case." ECF No. 93-3 at ¶ 2. Ms. Samuels also verifies that: (1) "the hourly rates of Timothy M. Hurley ($355.00/hour) and Emmit F. Kellar ($265.00/hour) are within the range of fees that are customary for attorneys of their industry and respective experience as prescribed by Appendix B.3 of this Court's Local Rules[;]" (2) "Mr. Hurley has been barred since 2006 and Mr. Kellar has been barred since 2016[,]" and (3) "the services for which the fees and costs have been charged were actually and necessarily performed." *Id.* at ¶¶ 4-5.

[3] While the Defendants generally object to the Bill of Costs, they do not dispute the calculation of Delaware Omaha's attorneys' fees and costs. *See* ECF Nos. 97, 147, 148 and 150.

have directly defied the Court's order" on several occasions. ECF No. 73 at 9. In this regard, Delaware Omaha represents to the Court in the Bill of Costs that it seeks to recover lost profits in the amount of $38,888.12 for costs related to the Defendants' unauthorized rental of the Havilland Property and additional costs associated with removing the "unauthorized tenants installed by Defendants from the Havilland Property." ECF No. 93 at 4-5.

Specifically, Delaware Omaha requests monthly expenses in the amount of $3,851.16 per month, for the period between July 2022 and February 2023, during which it could not rent out the Havilland Property due to the Defendants' actions, resulting in a total amount of $26,958.12 of rent for the Havilland Property. ECF No. 93 at 4-5. And so, Delaware Omaha has provided the following summary of the monthly costs that it has incurred for the Havilland Property:

| | |
|---|---|
| **Rent** | $2,300.00 |
| **Taxes** | $359.11 |
| **Insurance** | $186.06 |
| **Heating/Electric** | $573.40 |
| **Water/Sewer** | $67.59 |
| **Servicing Fee** | $65.00 |
| **Property Preservation (Landscaping, snow removal, etc.)** | $300.00 |
| **TOTAL MONTHLY EXPENSES** | $3,851.16 |

*Id.* at 4.

Delaware Omaha also states that it has incurred additional costs associated with removing the "unauthorized tenants installed by Defendants from the Havilland Property," as shown below. *Id.* at 5.

| | |
|---|---|
| **Monthly Expenses (x 7 months)** | $26,958.12 |
| **Repair for Rental** | $11,585.00 |
| **Changes Locks/Rekey** | $345.00 |
| **TOTAL LOST PROFITS** | **$38,888.12** |

*Id.* In this regard, Ms. Samuels explains that the "$2,300.00 in monthly rent for the Havilland Property represents a conservative broker opinion of market rent provided by Jennifer Young of Keller Williams Realty." ECF No. 93-3 at ¶ 8(a). Ms. Samuels also explains that "the $359.11 in taxes represents the monthly amount of property taxes charged by the State of Maryland against the Havilland Property during the time Delaware Omaha was unable to rent or sell the Property." *Id.* at ¶ 8(b). In addition, Ms. Samuels explains that (1) "the $186.06 represents the monthly cost for property insurance for the Havilland Property[;]" (2) "the $573.40 represents the average monthly cost for providing heating, air conditioning, and electricity to the Havilland

Property during the months when the Defendants' actions precluded Delaware Omaha from renting or selling the property[;]" (3) "the $67.59 represents the average monthly water and sewage bill for the Havilland Property during the months when the Defendants' actions precluded Delaware Omaha from renting or selling the property[;]" (4) "the $65.00 servicing fee represents the monthly cost for Delaware Omaha to process and pay all of the bills and costs associated with the Havilland Property on behalf of the tenant[;]" and (5) "$300 represents the monthly costs to maintain the outside portion of the Havilland Property." *Id.* at ¶¶ 8(c-g).

Lastly, with respect to the other costs that Delaware Omaha seeks to recover as lost profits, Ms. Samuels states that: "Delaware Omaha had to incur $11,585.00 in clean up fees" and "Delaware Omaha was forced to change and rekey the locks on the Havilland Property, which cost $345.00." *Id.* at ¶¶ 11-12.  The Defendants neither dispute these facts, nor the calculation of the amount of the lost profits.  *See* ECF Nos. 97, 147, 148, 150.

Because Delaware Omaha has shown that it is entitled to recover the requested lost profits, the Court AWARDS Delaware Omaha lost profits in the amount of $38,888.12.

## V.  CONCLUSION

For the foregoing reasons, the Court:

(1) **GRANTS** Delaware Omaha's motion to deem the allegations in the verified complaint admitted by the Defendants; and
(2) **AWARDS** Delaware Omaha attorneys' fees and costs in the amount of **$38,753.00** and lost profits in the amount of **$38,888.12.**

Separate Orders shall issue.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge