## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| OMAHA PROPERTY MANAGER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 22-cv-001623-LKG |
| | ) | |
| v. | ) | Dated:  March 7, 2025 |
| | ) | |
| KAMAL MUSTAFA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.    INTRODUCTION

In this civil action, the Plaintiff, Omaha Property Manager, LLC, a Delaware limited liability company ("Delaware Omaha"), asserts claims for injurious falsehood – disparagement of title, intentional interference with prospective economic advantage and civil conspiracy, against the Defendants Kamal Mustafa, Sidikatu Raji, Omaha Property Manager, LLC, a Maryland limited liability company ("Maryland Omaha"), Omaha Property Manager, LLC, an Illinois limited liability company ("Illinois Omaha") and NDF1, LLC ("NDF1"), a Maryland limited liability company (Defendants Maryland Omaha, Illinois Omaha and NDF1 are referred herein collectively as the "Corporate Defendants"), arising from the Defendants' issuance of fraudulent deeds for certain properties owned by Delaware Omaha. *See generally* ECF No. 2. Delaware Omaha has moved for summary judgment in its favor on these claims and for a permanent injunction, pursuant to Fed. R. Civ. P. 56.  ECF Nos. 163 and 163-1.  The motion is fully briefed.  ECF Nos. 163, 163-1, 166, 167, 167-1, 168 and 171.

In addition, the Defendants have filed the following motions: (1) Defendant Mustafa's motion for leave to file a response to the Plaintiff's statement of undisputed facts (ECF No. 174), (2) Defendant Raji's motion to dismiss (ECF No. 195) and (3) Defendant Raji's motion to stay pending appeal (ECF No. 196).  ECF Nos. 174, 195 and 196.  No hearing is necessary to resolve these motions.  L.R. 105.6 (D. Md. 2023).

For the reasons that follow, the Court: (1) **GRANTS** Delaware Omaha's motion for summary judgment and permanent injunction (ECF No. 163); (2) **AWARDS** Delaware Omaha

special damages in an amount to be determined by the Court; (3) **AWARDS** Delaware Omaha punitive damages in an amount to be determined by the Court; (4) **ENTERS** a **PERMANENT INJUNCTION** enjoining the Defendants from: (a) filing any fraudulent deeds asserting ownership or transfer of ownership relating to properties that are lawfully owned by Delaware Omaha; (b) making any public misrepresentation that the Defendants have any interest in the properties lawfully owned by Delaware Omaha; (c) entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha; (d) listing any of the properties lawfully owned by Delaware Omaha for sale; and (e) renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha; (5) **DENIES-as-MOOT** Defendant Mustafa's motion for leave to file a response and statement of undisputed facts (ECF No. 174); (6) **DENIES-as-MOOT** Defendant Raji's motion to dismiss (ECF No. 195); and (7) **DENIES-as-MOOT** Defendant Raji's motion to stay pending appeal (ECF No. 196).

## II.    FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

In this civil action, Delaware Omaha asserts Maryland tort claims for injurious falsehood – disparagement of title (Count I), intentional interference with prospective economic advantage (Count II) and civil conspiracy (Count III), against the Defendants, arising from the Defendants' issuance of fraudulent deeds for certain properties owned by Delaware Omaha. *See generally* ECF No. 2. As relief, Delaware Omaha seeks, among other things, to recover monetary damages and punitive damages from the Defendants, attorneys' fees and costs, and a permanent injunction enjoining the Defendants from: (a) filing any fraudulent deeds asserting ownership or transfer of ownership relating to properties that are lawfully owned by Delaware Omaha; (b) making any public misrepresentation that the Defendants have any interest in the properties lawfully owned by Delaware Omaha; (c) entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha; (d) listing any of the properties lawfully owned by Delaware Omaha for sale; and (e) renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha. ECF No. 163-2.

---

[1] The facts recited in this memorandum opinion are taken from the complaint; the joint record; Delaware Omaha's motion for summary judgment and permanent injunction, the memorandum in support thereof, and the exhibits attached thereto. ECF Nos. 2, 2-1, 163, 163-1, 163-2 and 173. Unless otherwise stated, the facts recited herein are undisputed.

<u>The Parties</u>

Plaintiff Delaware Omaha is a Delaware limited liability company, with its principal place of business located in Chicago, Illinois.  ECF No. 2 at ¶ 1.

Defendant Kamal Mustafa is a resident of Boyds, Maryland and the owner of Defendants Maryland Omaha, Illinois Omaha and NDF1.  *Id.* at ¶ 2.  Defendant Mustafa is neither employed by, nor affiliated with, Delaware Omaha.  ECF No. 173 (Joint Record) at 23 (22:19-23).

Defendant Sidikatu Raji is a resident of Frederick, Maryland and a realtor for a real estate company.  ECF No. 2 at ¶¶ 3 and 51.

Defendant Maryland Omaha is a Maryland limited liability company, with its principal place of business located in Boyds, Maryland.  *Id.* at ¶ 4.

Defendant Illinois Omaha is an Illinois limited liability company, with its principal place of business located in Boyds, Maryland.  *Id.* at ¶ 5.

Defendant NDF1 is a Maryland limited liability company, with its principal place of business located in Bowie, Maryland.  *Id.* at ¶ 6.

<u>Delaware Omaha And The Defendants' Entities</u>

The facts in this case are largely undisputed and are as follows.  Delaware Omaha was formed on June 11, 2020, under the name, Omaha Property Manager, LLC, for the purpose of purchasing residential properties during lawful foreclosure sales and reselling those properties to interested buyers.  ECF No. 173 at 14 (13:20-21) and 129-31.

On July 10, 2020, Defendant Mustafa registered Defendant NDF1 in the state of Maryland.  *Id.* at 140-43.  On November 18, 2021, Defendant Mustafa registered Defendant Illinois Omaha in the state of Illinois under the name, Omaha Property Manager LLC.  *Id.* at 26-27 (25:15-26:11) and 136-39.  On December 4, 2020, Defendant Mustafa registered Defendant Maryland Omaha in the state of Maryland under the name, Omaha Property Manager, LLC.  *Id.* at 25-26 (24:23-25:14) and 132-35.  Defendants Maryland Omaha, Illinois Omaha and NDF1 have no connection to Delaware Omaha.  *Id.* at 21 and 27 (20:15-18 and 26:12-19).

<u>The Properties</u>

Between September 2020 and May 2021, Delaware Omaha acquired four properties through lawful Maryland foreclosure actions (the "Properties").  *Id.* at 16 (15:6-14), 27-29 (26:20-28:16), 40 (39:9-19), 45 (44:24-46:14) and 147-68.

3

First, on September 15, 2020, Delaware Omaha purchased a property located at 1537 Havilland Place, Frederick, Maryland 21702 ("Havilland Place Property") at a foreclosure sale for $261,000. *Id.* at 40 (39:9-19) and 147-52. The Circuit Court for Frederick County, Maryland ratified the sale of the Havilland Place Property on or about November 19, 2020. *Id.* at 248. A substitute trustee's deed was executed, which conveyed the property to Delaware Omaha on December 10, 2020. *Id.* at 40-42 (39:20-41:23) and 147-52. Delaware Omaha recorded the deed for the Havilland Place Property in the official records of Frederick County, Maryland on or about February 22, 2021. *Id.* at 248-49.

Second, on December 2, 2020, Delaware Omaha purchased a property located at 14611 Bubbling Spring Road, Boyds, Maryland 20841 ("Bubbling Spring Property") at a foreclosure sale for $600,000. *Id.* at 16 (15:6-14) and 153-58. The Circuit Court for Montgomery County, Maryland ratified the sale on July 16, 2021. *Id.* at 245; ECF No. 2-1, Ex. B. On or about July 22, 2021, a fee simple trustee's deed was executed, which conveyed the Bubbling Spring Property to Delaware Omaha. ECF No. 173 at 16-19 (15:18-18:15) and 153-58. Delaware Omaha recorded the deed in the official records of Montgomery County, Maryland on or about November 4, 2021. *Id.* at 245.

Third, on March 2, 2021, Delaware Omaha purchased a home located at 4800 Hamilton Street, Hyattsville, Maryland ("Hamilton Street Property") at a foreclosure sale for $400,000. *Id.* at 27-29 (26:20-28:16) and 159-62. On or about April 27, 2021, a substitute trustee's deed was executed, which conveyed the Hamilton Street Property to Delaware Omaha. *Id.* at 29-32 (28:17-31:2) and 159-62. Delaware Omaha recorded the deed in the official records of Prince George's County, Maryland on or about May 17, 2021. *Id.* at 253.

Fourth, on May 4, 2021, Delaware Omaha purchased the property located at 5516 Vantage Point Road, Columbia, Maryland 21044 ("Vantage Point Property") for $299,250. *Id.* at 45-46 (44:24-45:14) and 163-68. The Circuit Court for Howard County, Maryland ratified the sale of the Vantage Point Property on or about September 3, 2021. *Id.* at 249. On September 15, 2021, a substitute trustee's deed was executed, which conveyed the Vantage Point Property to Delaware Omaha. *Id.* at 46-48 (45:15-47:22) and 163-68. Delaware Omaha recorded the deed in the official records of Howard County, Maryland on or about February 22, 2021. *Id.* at 249-50.

4

<u>The Defendants' Attempt To Sell And Lease Properties Owned By Delaware Omaha</u>

In late 2021 and 2022, the Defendants made several attempts to sell and rent the Properties owned by Delaware Omaha.  On or about November 24, 2021, Defendant Mustafa executed a deed purporting to transfer ownership of the Bubbling Spring Property to Defendant NDF1.  *Id.* at 21-22 (20:19-21:12) and 172-76.  Although Delaware Omaha held title to the Bubbling Spring Property at the time, Defendant Mustafa's deed represented that Maryland Omaha and/or Illinois Omaha owned the property.  *Id.* at 172-76.  The deed for the Bubbling Spring Property was recorded in the official records of Montgomery County, Maryland on or about December 10, 2021.  *Id.* at 246-47.

In March 2022, Delaware Omaha learned that someone unaffiliated with Delaware Omaha was claiming to be the lawful owner of the Bubbling Spring Property.  *Id.* at 20 (19:15-20).  Specifically, Delaware Omaha became aware of the Defendants' efforts to claim ownership of the Bubbling Springs Property, after the couple who previously owned the property—before Delaware Omaha purchased it through the foreclosure sale—filed for bankruptcy and continued to occupy the property.  *Id.* at 20-21 (19:21-20:1).  When Delaware Omaha requested that the Bankruptcy Court lift a stay, so that Delaware Omaha could pursue an eviction action against the couple, the couple objected on the basis that Defendant NDFI, rather than Delaware Omaha, owned the Bubbling Spring Property.  *Id.* at 21 (20:2-6).

To support their claim, the couple produced an Affidavit in the bankruptcy proceeding that was dated March 16, 2022, and signed by Defendant Mustafa, swearing that Defendants Maryland Omaha and Illinois Omaha owned the Bubbling Spring Property.  *Id.* at 169-71.  And so, on March 30, 2022, Delaware Omaha filed a verified complaint with the Circuit Court for Montgomery County, Maryland to quiet title, seeking a declaration of Delaware Omaha's lawful acquisition of the Bubbling Spring Property.  *Id.* at 177-89.

On April 26, 2022, approximately one month after Delaware Omaha filed the quiet title action for the Bubbling Spring Property, Defendant Mustafa executed a deed purporting to transfer ownership of the Havilland Place Property to Defendant NDF1.  *Id.* at 43-45 (42:4-44:19) and 194-201.  This deed was recorded in the official records of Frederick County, Maryland on or about May 3, 2022.  *Id.* at 249.  And so, on June 10, 2022, Delaware Omaha filed a verified complaint with the Circuit Court for Frederick County, Maryland to quiet title for the Havilland Place Property.  *Id.* at 202-12.

On April 26, 2022, Defendant Mustafa executed another deed, purporting to transfer ownership of the Hamilton Street Property to Defendant NDF1. *Id.* at 228-31. The deed for the Hamilton Street Property was recorded in the official records of Prince George's County, Maryland on or about May 17, 2022. *Id.* at 250. And so, on July 29, 2022, Delaware Omaha filed a verified complaint with the Circuit Court for Prince George's County, Maryland to quiet title. *Id.* at 232-42.

On May 5, 2022, Defendant Mustafa executed a third deed, purporting to transfer ownership of the Vantage Point Property to Defendant NDF1. *Id.* at 213-16. The deed for the Vantage Point Property was recorded in the official records of Howard County, Maryland on or about May 6, 2022. *Id.* at 250. And so, on June 10, 2022, Delaware Omaha filed a verified complaint with the Circuit Court for Howard County, Maryland to quiet title. *Id.* at 217-27.

On or about May 13, 2022, Delaware Omaha was alerted that Defendants Mustafa and Maryland Omaha were attempting to sell the Hamilton Street Property to third-party buyers for $250,000 with "good and marketable and insurable title." *Id.* at 32 (31:17-23), 190-93 and 253. But the sale of the Hamilton Street Property fell through when the title company discovered that Delaware Omaha was the rightful owner of the property. *Id.* at 36-37 (35:21-36:5).

On or about May 25, 2022, a real estate agent employed by Delaware Omaha received a call from Defendant Raji, who stated that her real estate company had taken over the listing for the Havilland Place Property and demanded that Delaware Omaha's listing for the property be removed. *Id.* at 251 ¶ 39. When Delaware Omaha's real estate agent refused to remove the listing, Defendant Mustafa emailed Delaware Omaha's agent on June 1, 2022, falsely claiming that Delaware Omaha is not the owner of the Havilland Place Property and threatening to file a complaint with the Maryland Real Estate Commission if Delaware Omaha's agent did not remove its listing. *Id.* at 256-60. As a result of Defendant Raji's and Defendant Mustafa's conduct, Delaware Omaha's agent withdrew Delaware Omaha's listing for the Havilland Place Property on June 1, 2022. *Id.* at 251 ¶ 41.

Defendants Mustafa and Raji also made similar threats to coerce the real estate agent employed by Delaware Omaha to remove the listing for the Vantage Point Property. *Id.* at 251-52 ¶¶ 39-44 and 261-64. After Delaware Omaha withdrew the listings for the Havilland Place and Vantage Point Properties, Defendant Raji, acting as Mustafa's real estate agent, listed the Havilland Place Property and Vantage Point Property for rent online. *Id.* at 58-60 (57:15-59:8).

Notably, it is undisputed that Defendant Mustafa also stole the spare key from the realtor's lockbox for the Vantage Point Property and listed the Vantage Point Property as a rental property. *Id.* at 252 ¶ 45.

Delaware Omaha's Tort Claims

Delaware Omaha contends in this matter that the Defendants committed the tort of injurious falsehood – disparagement of title, by uttering and publicizing slanderous material with regard to ownership of the Properties.[2]  ECF No. 2 at ¶¶ 70-78.  Delaware Omaha also contends that that Defendants acted with malice, by deliberately filing fraudulent deeds and making misrepresentations regarding Defendant NDF1's ownership of the Properties. *Id.* at ¶ 76.  And so, Delaware Omaha seeks to recover actual and special damages resulting from the monetary losses caused by its inability to freely sell the Properties, due to the Defendants' conduct. *Id.* at ¶¶ 77 and 78.

Delaware Omaha also contends that the Defendants committed the tort of intentional interference with prospective economic advantage, because the Defendants had actual knowledge of Delaware Omaha's rightful ownership of the Properties when they filed the fraudulent deeds and misrepresented that Defendant NDF1 owned the Properties. *Id.* at ¶¶ 81 and 82.  In this regard, Delaware Omaha argues that the Defendants' actions were calculated to interfere with its lawful ownership of the Properties. *Id.* at ¶ 84.  And so, Delaware Omaha also seeks to recover monetary damages from the Defendants to compensate it for the inability to sell the Properties and for certain legal fees incurred to address the Defendants' conduct. *Id.* at ¶ 86.

Lastly, Delaware Omaha contends in this case that the Defendants engaged in the tort of civil conspiracy, by acting in concert with each other, to unlawfully slander and interfere with its title to, and ownership of, the Properties. *Id.* at ¶¶ 90 and 91.  And so, Delaware Omaha also seeks to recover damages from the Defendants, including punitive damages, for this conduct. *Id.* at ¶¶ 92-93.

---

[2] The Court notes that Delaware Omaha did not list the Hamilton Street Property in its counts or prayer for relief in the complaint. *See* ECF No. 2 at 13-19.  However, because Delaware Omaha includes extensive undisputed evidence related to the Hamilton Street Property in the motion for summary judgment, and because some of the Defendants' actions were uncovered after the start of this litigation, the Hamilton Street Property is appropriately considered by the Court in Delaware Omaha's summary judgment motion.

<u>Delaware Omaha's Damages And Request For Relief</u>

Delaware Omaha maintains that, when it acquired the Properties, it intended to sell the Properties to third parties, but it was unable to do so due to the Defendants' fraudulent conduct. ECF No. 173 at 56-57 (55:25-56:4).  And so, Delaware Omaha contends that it has incurred a total of $60,193.00 in legal fees related to its litigation against the Defendants.  *See* ECF No. 163-1 at 15; ECF No. 173 at 350-51 and 356-57.

In addition, Delaware Omaha contends that its inability to sell the Properties forced it to pay property taxes, insurance and other costs, to maintain the properties in the following amounts:

- Havilland Place Property: $106,582.03;
- Bubbling Pring Property: $80,759.81;
- Hamilton Street Property: $64,586.70; and
- Vantage Point Property: $78,324.37.

ECF No. 163-1 at 15-16; ECF No. 173 at 354-56 and 359-88.  And so, Delaware Omaha asserts that its total financial losses in connection with this matter are $390,715.91 ($330,522.91 for property-related costs and $60,193.00 in quiet title legal fees).  ECF No. 163-1 at 16.

Lastly, Delaware Omaha seeks a permanent injunction enjoining the Defendants from: (a) filing any fraudulent deeds asserting ownership or transfer of ownership relating to properties that are lawfully owned by Delaware Omaha; (b) making any public misrepresentation that the Defendants have any interest in the properties lawfully owned by Delaware Omaha; (c) entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha; (d) listing any of the properties lawfully owned by Delaware Omaha for sale; and (e) renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha. ECF No. 163-2.

<u>The Litigation History</u>

The litigation history in this case is extensive and also relevant to the pending motion for summary judgment and permanent injunction.  Delaware Omaha originally filed this matter in the Circuit Court of Montgomery County, Maryland.  *See* ECF No. 2.  On July 1, 2022, the Defendants removed the case to this Court.  ECF No. 1.

On July 16, 2022, the Court issued a temporary restraining order ("TRO") against the Defendants, which ordered that:

8

A. Defendants Sidikatu Raji, Omaha Property Manager, LLC (Maryland Omaha), Omaha Property Manager, LLC (Illinois Omaha), and NDF1, LLC, (collectively, "Defendants") are enjoined from filing any fraudulent deeds asserting ownership or transfer or ownership relating to properties that are lawfully owned by Plaintiff Delaware Omaha;

B. Defendants are enjoined from making any public misrepresentations that Defendants have any interest in the properties lawfully owned by Delaware Omaha;

C. Defendants are enjoined from entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha;

D. Defendants are enjoined from listing any of the properties lawfully owned by Delaware Omaha for sale;

E. Defendants must make all efforts necessary to ensure that any such listings are removed from public websites;

F. Defendants are enjoined from renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha; and

G. The Court reserves for consideration the request for all costs, attorneys' fees, and expenses of this action.

ECF No. 17. On August 19, 2022, the Court issued a preliminary injunction in favor of Delaware Omaha, which provided the same relief as the TRO in all material respects, except that the preliminary injunction also pertains to Defendant Mustafa. ECF No. 33.

Despite the issuance of a preliminary injunction, the Defendants continued to engage in improper conduct related to the Properties. ECF No. 73 at 6-10. Specifically, on July 20, 2022, Defendant Mustafa filed an Official Form 106 A/B with the United States Bankruptcy Court for the District of Maryland, which falsely represented that he, as the owner of Defendant NDF1, owned the Properties. *Id.* at 7; ECF No. 173 at 296-307. On August 27, 2022, Defendant Mustafa also put tenants in the Havilland Place Property to receive rent, and when Delaware Omaha contacted the police on August 30, 2022, Defendant Mustafa told the officers that he was the owner of the property, and that he had leased the property to the tenants. ECF No. 73 at 7; ECF No. 173 at 331-32. And so, Delaware Omaha filed an emergency supplemental motion for contempt on September 2, 2022. ECF No. 37.

On February 24, 2023, the Court issued a memorandum opinion and an order that, among other things: (1) granted Delaware Omaha's motion for contempt and for attorneys' fees and sanctions (ECF No. 27) and (2) granted Delaware Omaha's supplemental motion to find the Defendants in contempt (ECF No. 37). ECF Nos. 73 and 74. Thereafter, the Court awarded

Delaware Omaha attorneys' fees and costs in the amount of $38,753.00, and lost profits in the amount of $38,888.12.  ECF Nos. 175 and 177.[3]

## B.  Relevant Procedural Background

On July 29, 2024, Delaware Omaha filed a motion for summary judgment and permanent injunction, pursuant to Fed. R. Civ. P. 56, and a memorandum in support thereof.  ECF Nos. 163 and 163-1.  On August 16, 2024, Defendant Raji filed a response in opposition to Delaware Omaha's motion.  ECF No. 166.

On August 28, 2024, the Corporate Defendants filed a response in opposition to Delaware Omaha's motion for summary judgment.  ECF No. 167.  On August 28, 2024, Defendant Mustafa also filed his response in opposition to Delaware Omaha's motion for summary judgment.

On September 17, 2024, Delaware Omaha filed a reply brief.  ECF No. 171.

Delaware Omaha's motion for summary judgment having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.  Rule 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

---

[3] On July 12, 2023, the Court issued an Order staying this case, pending Defendant Mustafa's appeal. ECF No. 112.  On October 14, 2023, the United States Court of Appeals for the Fourth Circuit dismissed the appeal.  ECF No. 114-1.  During the pendency of the stay, the Defendants filed seven motions.  And so, the Court issued an Order on April 18, 2024, striking these motions, as well as Delaware Omaha's responses to the motions.  ECF No. 137.  Following a telephonic status conference held on May 1, 2024, the Court issued a Scheduling Order on May 2, 2024, that lifted the stay of proceedings, directed the Defendants to file answers to the complaint and held-in-abeyance all pending motions pending the resolution of the parties' anticipated motions for summary judgment.  ECF No. 144.

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Injurious Falsehood

Under Maryland law, the tort of slander of title, or injurious falsehood, is a cause of action derived from the traditional tort of defamation. *Wal-Mart Real Est. Bus. Tr. v. Garrison Realty Invs., LLC*, 657 F. Supp. 3d 757, 763-64 (D. Md. 2023); *see also Rite Aid Corp. v. Lake Shore Inv'rs*, 471 A.2d 735, 738 (Md. 1984) (concluding that it is "firmly established that . . . injurious falsehood (sometimes known as disparagement or slander of title)" is an actionable tort). This Court has held that "[i]njurious falsehood consists of 'the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general, . . . of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage.'" *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 584 (D. Md. 2015) (quoting *Beane v. McMullen*, 291 A.2d 37, 48 (Md. 1972)). And so, to prevail on a claim for injurious falsehood, the plaintiff must show: (1) a false statement, (2) that

the false statement was communicated to someone else (publication), (3) malice, and (4) special damages. *Wal-Mart Real Est. Bus. Tr.*, 657 F. Supp. 3d at 764 (quoting *Rounds v. Md.-Nat. Cap. Park & Plan. Comm'n*, 109 A.3d 639, 663 (Md. 2015)).

### C. Tortious Interference With A Business

This Court has recognized that "[t]he tort of intentional interference with contractual or business relations is 'well-established in Maryland.'" *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 116 (Md. 1994)). This tort requires that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby." *United Rental Equip. Co. v. Potts & Callahan Contracting Co.*, 191 A.2d 570, 574 (Md. 1963). To prove a claim for intentional interference with contractual or business relations, a plaintiff must show the following elements:  "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)).

Maryland courts have recognized that such tortious interference has "two general manifestations." *Macklin*, 639 A.2d at 117. The interference either induces the breach of an existing contract, or, in the absence of an existing contract, the interference "maliciously or wrongfully infringes upon an economic relationship." *Id.* "An essential element of a tortious interference claim is a showing that the actions undertaken were 'wrongful.'" *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 541 (D. Md. 2006) (quoting *Martello v. Blue Cross & Blue Shield of Md., Inc.*, 795 A.2d 185, 194 (Md. Ct. Spec. App. 2002)). In this regard, "[w]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Id.* (quoting *Carter v. Aramark Sports & Ent. Servs.*, 835 A.2d 262, 280 (Md. Ct. Spec. App. 2003), *cert. denied*, 844 A.2d 427 (Md. 2004)). Lastly, "the defendant [must] not be a party to the economic relationship." *Blondell*, 991 A.2d at 97.

### D.  Civil Conspiracy Claims

A civil conspiracy involves "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005) (quoting *Green v. Wash. Suburban Sanitary Comm'n*, 269 A.2d 815, 824 (Md. 1970)).  To prevail on a civil conspiracy claim, a plaintiff must prove: (1) an unlawful agreement; (2) the commission of an overt act in furtherance of the agreement; and (3) that as a result, the plaintiff suffered actual injury.  *Id.*  In this regard, this Court has held that civil conspiracy is not an independent cause of action; rather, a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort."[4]  *Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d 341, 346-47 (D. Md. 2003) (citation omitted).  And so, a civil conspiracy claim is not "capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 485 (Md. 2006) (quoting *Hoffman*, 867 A.2d at 290).

### E.  Permanent Injunction

Lastly, a party seeking a permanent injunction must demonstrate that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *Mayor of Balt. v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (citing *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

### IV.    ANALYSIS

Delaware Omaha has moved for summary judgment on its claims in this civil action and for a permanent injunction, pursuant to Fed. R. Civ. P. 56, upon the following six grounds.  First, Delaware Omaha argues that it is entitled to summary judgment on its injurious falsehood –

---

[4] To prove a civil conspiracy, a plaintiff may rely upon "circumstantial evidence[,] because 'in most cases it would be practically impossible to prove a conspiracy by means of direct evidence alone.'" *Windsheim v. Larocca*, 116 A.3d 954, 975 (Md. 2015) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)).  And so, "a conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design." *Hoffman*, 867 A.2d at 291 (citation omitted).

disparagement of title claim in Count I of the complaint, because the undisputed material facts show that the Defendants made and communicated false statements about their ownership of the Properties with malice, and Delaware Omaha has suffered special damages as a result of this conduct. ECF No. 163-1 at 17-20. Second, Delaware Omaha argues that it is entitled to summary judgment on its intentional interference with prospective economic advantage claim in Count II of the complaint, because the Defendants intentionally and willfully made and communicated false statements about their ownership of the Properties for the unlawful purpose of damaging Delaware Omaha's business, and Delaware Omaha suffered significant financial damages as a result. *Id.* at 20-22. Third, Delaware Omaha argues that it is entitled to summary judgment on its civil conspiracy claim in Count III of the complaint, because the undisputed material facts show that: (1) the Corporate Defendants were created by, and acted at the behest of, Defendant Mustafa in furthering his fraudulent goals; (2) Defendant Raji also participated in the fraud scheme; and (3) the Defendants engaged in this conduct for the purpose of hindering Delaware Omaha's business. *Id.* at 22-24.

Fourth, Delaware Omaha argues that it is also entitled to summary judgment on its claim for special and actual damages in this matter, because it has suffered harm and incurred damages, lost profits, attorneys' fees and costs, as a result of the Defendants' tortious conduct. *Id.* at 24-25. Fifth, Delaware Omaha argues that it is entitled to punitive damages, because it sought such damages in the complaint and the undisputed material facts show that the Defendants acted with actual malice. *Id.* at 25-27. Lastly, Delaware Omaha argues that it is entitled to a permanent injunction, because the balance of the relevant factors weighs in favor of granting this relief. *Id.* at 27-30. And so, Delaware Omaha requests that the Court grant its motion for summary judgment and permanent injunction and award the damages and injunctive relief that it seeks in this matter. *Id.* at 30.

The Defendants fail to substantively respond to Delaware Omaha's arguments in their respective responses in opposition to Delaware Omaha's motion. *See generally* ECF Nos. 166, 167 and 168. But, the Defendants have generally maintained in this case that: (1) there are material facts in dispute in this matter that preclude summary judgment; (2) the *Rooker-Feldman* and *res judicata* doctrines bar Delaware Omaha's claims; (3) Delaware Omaha lacks standing; (4) Delaware Omaha acted in bad faith; (5) Delaware Omaha committed perjury and failed to pay Maryland taxes; (6) Delaware Omaha has operated without a license; (7) Delaware Omaha's

Vice President falsely claimed that Delaware Omaha purchased the Properties; and (8) Delaware Omaha's requested injunctive relief would violate their civil rights. *See* ECF Nos. 147, 148, 150, 166, 167 and 168. And so, the Defendants request that the Court deny Delaware Omaha's motion. ECF Nos. 166 at 9, 167-1 at 14 and 168 at 12.

For the reasons set forth below, the undisputed material facts in this case show that Delaware Omaha is entitled to summary judgment on its injurious falsehood – disparagement of title claim in Count I of the complaint, because the Defendants made false statements about their ownership of the Properties with malice, and Delaware Omaha has suffered special damages due to the Defendants' conduct. The undisputed material facts also show that Delaware Omaha is entitled to summary judgment on its intentional interference with prospective economic advantage claim in Count II of the complaint, because the Defendants intentionally and willfully made and communicated false statements about their ownership of the Properties for the unlawful purpose of damaging Delaware Omaha's business, and Delaware Omaha has suffered significant financial damages as a result. The undisputed material facts similarly show that Delaware Omaha is entitled to summary judgment on its civil conspiracy claim, because the Defendants acted together to hinder Delaware Omaha's business by committing the aforementioned torts.

In addition, the unrebutted evidence in this case shows that Delaware Omaha is entitled to recover actual, special and punitive damages from the Defendants. Lastly, the unrebutted evidence also shows that Delaware Omaha is entitled to the injunctive relief that it seeks in this matter. And so, the Court: (1) GRANTS Delaware Omaha's motion for summary judgment and permanent injunction (ECF No. 163); (2) AWARDS Delaware Omaha special damages in an amount to be determined by the Court; (3) AWARDS Delaware Omaha punitive damages in an amount to be determined by the Court; (4) ENTERS a PERMANENT INJUNCTION enjoining the Defendants from: (a) filing any fraudulent deeds asserting ownership or transfer of ownership relating to properties that are lawfully owned by Delaware Omaha; (b) making any public misrepresentation that the Defendants have any interest in the properties lawfully owned by Delaware Omaha; (c) entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha; (d) listing any of the properties lawfully owned by Delaware Omaha for sale; and (e) renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha; (5) DENIES-as-MOOT Defendant Mustafa's motion for

leave to file a response and statement of undisputed facts (ECF No. 174); (6) DENIES-as-MOOT Defendant Raji's motions to dismiss (ECF No. 195); and (7) DENIES-as-MOOT Defendant Raji's motion to stay pending appeal (ECF No. 196).

### A. Delaware Omaha Is Entitled To Summary Judgment On Its Injurious Falsehood – Disparagement Of Title Claim

As an initial matter, the undisputed material facts in this case show that Delaware Omaha is entitled to summary judgment on its injurious falsehood – disparagement of title claim. In Count I of the complaint, Delaware Omaha alleges that the Defendants committed the tort of injurious falsehood – disparagement of title, because the Defendants uttered and publicized slanderous material with regard to Delaware Omaha's lawful title to the Properties. ECF No. 2 at ¶¶ 70-78. To prevail on this claim, Delaware Omaha must show: (1) a false statement; (2) that the false statement was communicated to someone else (publication); (3) malice; and (4) special damages. *Wal-Mart Real Est. Bus. Tr.*, 657 F. Supp. 3d at 763-64 (quoting *Rounds*, 109 A.3d at 663). Delaware Omaha can make such a showing here for several reasons.

First, the undisputed material facts show that the Defendants made numerous false statements about the ownership of the Properties. In this case, it is undisputed that Defendant Mustafa executed and recorded four separate deeds that purported to transfer ownership of the Properties from Defendants Maryland Omaha or Illinois Omaha to Defendant NDF1. ECF No. 173 at 172-76, 194-201, 213-16 and 228-31. It is also undisputed that Defendant Mustafa executed these deeds after Delaware Omaha had already recorded deeds showing that it owned these Properties. *Id.* at 147-68, 245, 248-50 and 253. Given this, the Court has previously determined that the deeds executed by the Defendants "were knowingly false." *Id.* at 107-08 (106:22-107:1).

The undisputed material facts also show that Defendant Mustafa made a false statement regarding the ownership of the Bubbling Springs Property on March 16, 2022, when he submitted a sworn affidavit in a bankruptcy proceeding falsely stating that Defendants Maryland Omaha and Illinois Omaha owned the Bubbling Spring Property. *See id.* at 20-21 (19:15-20:6) and 169-71. The undisputed material facts similarly show that Defendants Mustafa and Maryland Omaha made false statements about the title and ownership of the Hamilton Street Property on April 29, 2022, when they attempted to sell this property and claimed "good and marketable and insurable title." *Id.* at 32 (31:17-23), 190-93 and 253.

In addition, the undisputed material facts show that on July 20, 2022, Defendant Mustafa filed an Official Form 106 A/B with the United States Bankruptcy Court for the District of Maryland, which falsely represented that he, as the owner of Defendant NDF1, owned the Properties. *Id.* at 296-307. Lastly, it is undisputed that Defendants Raji and Mustafa also made false statements about the ownership of the Havilland Place and Vantage Point Properties, when they contacted Delaware Omaha's real estate agents and claimed ownership over these Properties and demanded that the listings of these properties be removed. *Id.* at 256-64.

The undisputed material facts also make clear that the Defendants communicated these false statements to a third party. *See id.* at 20-21 (19:15-20:6), 32 (31:17-23), 169-71, 190-93, 249-53, 256-64 and 296-307; *see also Beane*, 291 A.2d at 49. And so, the first two elements of Delaware Omaha's injurious falsehood – disparagement of title claim are established by the undisputed material facts.

The undisputed material facts also make clear that the Defendants communicated false statements regarding the ownership and titles of the Properties with malice. Maryland courts have held that one method of establishing malice is to show that "the defendant knows that what he says is false, regardless of whether he has an ill motive or intends to affect the plaintiff at all." *Beane*, 265 A.2d at 49 (quoting Prosser, Law of Torts, at 919-20 (4th ed. 1971)).

Here, the undisputed evidence makes clear that the Defendants knew that their statements regarding the ownership of, and title to, the Properties were false. Notably, the undisputed material facts show that Defendant Mustafa registered Defendants Maryland Omaha and Illinois Omaha in Maryland and Illinois respectively, after Delaware Omaha had been created, suggesting that he intended to use these entities as copycat real estate companies. ECF No. 173 at 132-39. The undisputed material facts regarding the timing of the recording of the Defendants' fraudulent deeds also show that the Defendants knew their statements about the ownership of the Properties were false. Specifically, Defendant Mustafa executed three fraudulent deeds purporting to transfer title for the Hamilton Street Property, the Havilland Place Property and the Vantage Point Property, after he knew that Delaware Omaha filed a quite title action to address the fraudulent deed for the Bubbling Spring Property. *Id.* at 177-89, 213-16 and 228-31. In fact, the undisputed material facts show that Defendant Mustafa not only executed these three deeds after Delaware Omaha filed a quiet title action, but he did so in rapid

succession, in an apparent effort to transfer title to the Properties before the quite title case was resolved. *See id.* at 249-53.

Perhaps even more troubling, the litigation history for this case makes clear that the Defendants continued to falsely claim ownership of the Properties notwithstanding the Court's issuance of a TRO and a preliminary injunction enjoining the Defendants from claiming ownership of the Properties. ECF No. 17; ECF No. 73 at 7; ECF No. 173 at 107 (106:22-107:1) 296-307 and 331-32. And so, the undisputed material facts show that the Defendants made and communicated the false statements at issue with malice, thereby satisfying the third element of this tort. *See Wal-Mart Real Est. Bus. Tr.*, 657 F. Supp. 3d at 764.

Lastly, Delaware Omaha has shown that it suffered special damages as a result of the Defendants' conduct. *See Rite Aid Corp.*, 471 A.2d at 742 ("Special damages are those which result in a pecuniary loss directly or immediately from the conduct of third persons."). Maryland courts have held that pecuniary loss in the context of the tort of injurious falsehood includes loss "from the impairment of vendibility or value by the disparagement and the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by the disparagement." *Id.* Here, Delaware Omaha argues that it has incurred the following special damages as a result of the Defendant's tortious conduct:

> (1) $60,193.00 in attorneys' fees from March 2022 – December 2023 for the four state quiet title actions;
>
> (2) $106,582.03 in losses related to the Havilland Place Property, including taxes, insurance, maintenance, repairs, utilities, and miscellaneous expenses;
>
> (3) $80,759.81 in losses related to the Bubbling Spring Property, including taxes, insurance, homeowner's association fees, maintenance, repairs, utilities, miscellaneous expenses, and escrow advances;
>
> (4) $64,856.70 in losses related to the Hamilton Street Property, including taxes, insurance, maintenance, repairs, utilities, and miscellaneous expenses; and
>
> (5) $78,324.37 losses related to the Vantage Point Property, including taxes, insurance, homeowner's association fees, maintenance, repairs, utilities, and miscellaneous expenses.

*See* ECF No. 163-1 at 24-25; ECF No. 173 at 351, 355-56 and 359-88. And so, Delaware Omaha seeks to recover $390,715.91 in damages from the Defendants for their tortious conduct. ECF No. 163-1 at 25.

The Court agrees that Delaware Omaha is entitled to recover special damages from the Defendants for its costs and losses.  As the undisputed material facts make clear, Delaware Omaha was required to bring four separate quite title actions in state court, and this litigation, due to the Defendants' false statements about the ownership of the Properties.  ECF No. 173 at 177-89, 202-12, 217-27 and 232-42.  The undisputed material facts also show that Delaware Omaha incurred the other losses and expenses that it claims, because it was unable to immediately sell the Properties due to the Defendants' tortious conduct.  *Id.* at 351, 355-56 and 359-88.

Given this, Delaware Omaha has satisfied the final element of its injurious falsehood – disparagement of title claim.  And so, the Court GRANTS Delaware Omaha' motion for summary judgment on this claim.

The Court observes, however, that it does not currently have before it sufficient evidence to support and establish the specific amount of special damages that Delaware Omaha is entitled to recover.  And so, the Court will award Delaware Omaha special damages in amount to be determined by the Court after Delaware Omaha submits a bill of costs for its special damages.

**B.  Delaware Omaha Is Entitled To Summary Judgment
On Its Tortious Interference With Prospective Economic Advantage Claim**

The undisputed material facts also show that Delaware Omaha is entitled to summary judgment on its tortious interference with prospective economic advantage claim in Count II of the complaint.  To prevail on this claim, Delaware Omaha must show: "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *See Blondell*, 991 A.2d at 97 (quoting *Kaser*, 831 A.2d at 53).  Again, the undisputed material facts show that Delaware Omaha can make this showing.

First, the undisputed material facts show that the Defendants' committed intentional and willful acts by falsely stating that they owned the Properties.  As discussed above, the Defendants made and communicated numerous false statements regarding the ownership of, and title to, the Properties in deeds and in court proceedings.  ECF No. 173 at 20-21 (19:15-20:6), 32 (31:17-23), 169-76, 190-201, 213-16, 228-31, 256-64 and 296-307.

Delaware Omaha has also shown that the Defendants' willful and intentional acts were calculated to cause damage to the Delaware Omaha's lawful business.  Again, as discussed above, the undisputed material facts show that Defendant Mustafa created the Corporate Defendants for the purpose of establishing copycat entities that could mirror Delaware Omaha's business activities.  *Id.* at 132-39.  The undisputed material facts also show that, shortly after he created the Corporate Defendants, Defendant Mustafa executed four fraudulent deeds that purported to convey the Properties to Defendant NDF1.  *Id.* at 172-76, 194-201, 213-16 and 228-31.

It is also undisputed that Defendant Mustafa attempted to sell the Hamilton Street Property to a third-party buyer and that Defendants Mustafa and Raji interfered with Delaware Omaha's attempts to sell the Properties in May and June of 2022, by threatening Delaware Omaha's real estate agents with litigation and professional charges for listing properties that Delaware Omaha lawfully owned for sale.  *See id.* at 251-52 ¶¶ 39-44 and 256-64.  Given this evidence, the Court agrees with Delaware Omaha that the Defendants' conduct was calculated to cause damages to its business.  *See id.*; *see also Medical Mut. Liability Soc'y of Md. v. B. Dixon Evander & Assocs., Inc.*, 660 A.2d 433, 439 (Md. 1995) (holding that to "establish causation in a wrongful interference action, the plaintiff must prove that the defendant's wrongful or unlawful act caused the destruction of the business relationship which was the target of the interference").

The undisputed evidence similarly shows that the Defendants' actions were done maliciously and with an unlawful purpose, and that Delaware Omaha has incurred damages as a result, thereby satisfying the third and fourth elements of this tort.  The Supreme Court of Maryland has held that the tort of injurious falsehood can "supply the element of malice" and, thus, satisfy the unlawful purpose element of the tort of tortious interference with business relations.  *See Alexander & Alexander Inc. v. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 270 (Md. 1994).  In this case, the Court has determined that the Defendants committed the tort of injurious falsehood – disparagement of title, by falsely stating that they owned the Properties.  And so, the undisputed material facts also show that the Defendants' actions were done maliciously and with an unlawful purpose.  *See id.* at 271 (holding that a plaintiff may show malice by proving conduct that is independently wrongful or unlawful); *see also Baron Fin. Corp.*, 471 F. Supp. 2d at 541 (D. Md. 2006) (noting that "[w]rongful or malicious interference

with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships" (citation omitted)).

Lastly, the undisputed material facts show that Delaware Omaha has incurred damages that are a "natural, proximate and direct effect of the tortious misconduct" by the Defendants. *State Farm Mut. Auto. Ins. Co.*, 381 F. Supp. 3d at 569 (D. Md. 2019). As discussed above, the unrebutted evidence shows that Delaware Omaha was forced to bring four separate quiet title actions to address the Defendants' conduct, as well as this civil action. ECF No. 173 at 177-89, 202-12, 217-27 and 232-42. Given this, the attorneys' fees and litigation costs that Delaware Omaha has incurred in those cases naturally arose from the Defendants' tortious conduct. *See State Farm Mut. Auto. Ins. Co.*, 381 F. Supp. 3d at 569. The unrebutted evidence also shows that the Defendants' tortious conduct prevented Delaware Omaha from selling the Properties and that, as a result, Delaware Omaha incurred property taxes, insurance fees and other costs to maintain the Properties. *See* ECF No. 173 at 352-88.

Given this, the undisputed material facts show that Delaware Omaha is entitled to recover damages resulting from the Defendants' tortious interference with its business. And so, the Court GRANTS Delaware Omaha's motion for summary judgment on its tortious interference with prospective economic advantage claim.

### C. Delaware Omaha Is Entitled To Summary Judgment On Its Civil Conspiracy Claim

Turning to Delaware Omaha's civil conspiracy claim in Count III of the complaint, the Court is also satisfied that the undisputed material facts show that Delaware Omaha is entitled to summary judgment in its favor on this claim. Maryland courts have held that a civil conspiracy involves "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman*, 867 A.2d at 290 (quoting *Green*, 269 A.2d at 824). And so, to prevail on its civil conspiracy claim here, Delaware Omaha must prove: (1) an unlawful agreement; (2) the commission of an overt act in furtherance of the agreement; and (3) that as a result, the plaintiff suffered actual injury. *Id.* Because civil conspiracy is not an independent cause of action, the Defendants' liability for civil conspiracy will depend entirely on their liability for the underlying substantive tort. *Hejirika*, 264 F. Supp. 2d at 346-47.

As discussed above, the undisputed material facts in this case show that the Defendants have committed the torts of injurious falsehood – disparagement of title and intentional interference with prospective economic advantage, by making and communicating numerous false statements about the ownership of the Properties and interfering with Delaware Omaha's ability to sell the Properties. And so, these two torts may support Delaware Omaha's civil conspiracy claim. *See id.*

The unrebutted evidence in this case also shows that the Defendants entered into an unlawful agreement to commit these torts and that the Defendants committed tortious acts in furtherance of their agreement. In this regard, it is undisputed that Defendant Mustafa created the Corporate Defendants and that the Corporate Defendants operated and functioned on Defendant Mustafa's behalf to execute the fraudulent deeds at issue in this case. ECF No. 173 at 132-43. It is also undisputed that Defendant Raji, acting as Defendant Mustafa's real estate agent, improperly listed the Havilland Place Property and Vantage Point Property for rent online, even though these Properties were owned by Delaware Omaha. *Id.* at 58-60 (57:15-59:8). The unrebutted evidence also shows that Defendants Raji and Mustafa contacted Delaware Omaha's real estate agents for the Havilland Place and Vantage Place Properties to force the agents to remove Delaware Omaha's listings for these properties. *Id.* at 251-52 ¶¶ 39-44 and 256-64.

While this evidence does not provide direct evidence of the Defendants' conspiracy, Delaware Omaha can establish a conspiracy by inference, based upon, among other things, the nature of the tortious acts complained of here, the individual and collective interest of the Defendants, and the situation and relation of Delaware Omaha and the Defendants at the time of the commission of these tortious acts. *See Hoffman*, 867 A.2d at 290 ("[A] conspiracy may be established by inference from the nature of the acts complained of, the individual and collective interest of the alleged conspirators, the situation and relation of the parties at the time of the commission of the acts, the motives which produced them, and all the surrounding circumstances preceding and attending the culmination of the common design."). The Court is satisfied that Delaware Omaha has established such an inference here.

Lastly, as discussed above, the unrebutted evidence also shows that Delaware Omaha has suffered actual injury as a result of the Defendants' tortious conduct, due to its need to file multiple lawsuits against the Defendants and its inability to sell the Properties. ECF No. 173 at

177-89, 202-12, 217-27, 232-42 and 352-88.  And so, the Court GRANTS Delaware Omaha's motion for summary judgment on its civil conspiracy claim.

### D.  Delaware Omaha Is Entitled To Punitive Damages And Injunctive Relief

Having determined that Delaware Omaha can prevail on its three tort claims, and that Delaware Omaha is entitled to recover actual and special damages, the Court considers as a final matter, whether Delaware Omaha is entitled to punitive damages and injunctive relief.  Under Maryland law, punitive damages may be recovered in cases involving interference with business relations and injurious falsehood – disparagement of title.  *See Rite Aid Corp.*, 471 A.2d at 742 (internal quotations omitted).  And so, upon an award of actual and special damages for these torts, Delaware Omaha may also seek to recover punitive damages.  *Id.* at 743.

To recover punitive damages in this case, Delaware Omaha must show that the tortious acts at issue were committed with "actual malice."  *Id.*; *see also Alexander & Alexander Inc.*, 650 A.2d at 269 (Actual malice is "conduct by the defendant characterized by evil motive, intent to injure, ill will, or fraud.").  Delaware Omaha must also show that the proposed punitive damages are warranted based upon the following factors which the Court considers before awarding such damages:

(1) The gravity of the defendants' wrong;

(2) The defendants' ability to pay;

(3) The deterrence value of the amount awarded by the jury, under all the circumstances of the case;

(4) Comparison of the punitive damages award to the civil or criminal penalties that could be imposed for comparable misconduct;

(5) Comparison of the punitive damages award to other final punitive damages awards in the jurisdiction;

(6) Other final and satisfied punitive damages awards against the same defendant for the same conduct;

(7) If the punitive damages award is based on separate torts, whether all the torts grew out of a single occurrence or episode;

(8) Plaintiff's reasonable costs and expenses resulting from the defendant's malicious and tortious conduct which are not covered by the award of compensatory damages; and

(9) The relationship between the punitive and compensatory awards in the case.

*CMH Mfg. v. Neil*, 620 F. Supp. 3d 316, 323-24 (D. Md. 2022).

In this case, Delaware Omaha seeks to recover punitive damages in the amount of ten times the amount of its special damages. *See* ECF No. 163-1 at 27. The Court is satisfied that there is ample evidence in this case to show the Defendants acted with actual malice in committing the torts at issue, to support an award of punitive damages in his case. Notably, the undisputed material facts show that the Defendants knowingly and repeatedly made and communicated false statements to third parties regarding the ownership of, and title to, the Properties, and interfered with Delaware Omaha's ability to sell the Properties. As also discussed above, the Defendants' tortious conduct continued in this regard even after the Court issued a TRO and a preliminary injunction enjoining the Defendants from claiming ownership of the Properties.

Delaware Omaha has not shown, however, that the *specific amount* of punitive damages that it seeks to recover—10 times the amount of special damages—is appropriate under the factors that the Court must consider in awarding this relief. Given this, the Court will hold-in-abeyance a determination on the amount of the punitive damages to be awarded in this case, pending the submission of a bill of costs and supplemental briefing on this issue. And so, the Court GRANTS-in-PART Delaware Omaha's motion for summary judgment on this issue and AWARDS Delaware Omaha punitive damages in an amount to be determined by the Court.

Lastly, the Court is also satisfied that Delaware Omaha is entitled to the permanent injunctive relief that it seeks in this matter. Delaware Omaha seeks a permanent injunction enjoining the Defendants from: (a) filing any fraudulent deeds asserting ownership or transfer of ownership relating to properties that are lawfully owned by Delaware Omaha; (b) making any public misrepresentation that the Defendants have any interest in the properties lawfully owned by Delaware Omaha; (c) entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha; (d) listing any of the properties lawfully owned by Delaware Omaha for sale; and (e) renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha. ECF No. 163-2.

To obtain such relief, Delaware Omaha must show: (1) "actual success" on the merits; (2) it has suffered an irreparable injury; (3) the remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (4) the balance of hardships show a remedy in equity is warranted; and (5) the public interest would not be disserved by a permanent

injunction.  *Mayor of Balt.*, 973 F.3d at 274 (citing *eBay Inc.*, 547 U.S. at 391).  Delaware
Omaha has made such a showing here.

First, Delaware Omaha has succeeded on the merits of its tort claims in this case, because
the Court has determined that the undisputed material facts show that the Defendants committed
the torts of injurious falsehood – disparagement of title, tortious interference with prospective
economic advantage and civil conspiracy, by making and communicating false statements about
the Properties and interfering with Delaware Omaha's real estate business.  Second, Delaware
Omaha has also shown that it has suffered, and will continue to suffer, irreparable harm absent
the requested permanent injunctive relief, because the Defendants have harmed, and continue to
harm, Delaware Omaha's business and reputation.  ECF No. 173 at 64-65 (63:11-64:19) and 108
(107:17-25); *see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating
Co.*, 22 F.3d 546, 552 (4th Cir.1994), *abrogated on other grounds by Winter v. Natural Res. Def.
Council, Inc.*, 555 U.S. 7 (2008) (When the harm relates to "permanent loss of customers to a
competitor or the loss of goodwill, the irreparable injury prong is satisfied.").  Third, the Court
also agrees with Delaware Omaha that monetary remedies are insufficient to compensate for, and
deter, the Defendants' tortious conduct, because the undisputed material facts show that the
Defendants have continued to falsely claim that they own the Properties after being confronted
by Delaware Omaha in multiple quite title actions and the filing of this litigation.

Lastly, the balance of hardships also favors awarding the requested injunctive relief.
Without an injunction to ensure that the Defendants do not interfere with Delaware Omaha's
lawful business, Delaware Omaha will remain under threat of future interference with its
properties.  While the Defendants argue that the requested injunctive relief will violate their civil
rights, this argument is unsubstantiated and also belied by the fact that the injunctive relief
sought here pertains only to properties lawfully owned by Delaware Omaha.  *See* ECF No. 173 at
109 (108:7-9) (finding at the preliminary injunction hearing that "in terms of balancing the
equities of an injunction, it is effectively just asking [the Defendants] to cease committing
fraudulent activity").  In addition, the Court has previously held that "certainly it's in the public
interest that the Court issue an injunction requiring [the Defendants' fraudulent scheme] to
cease."  *Id.* at 109 (108:1-6).  And so, the Court GRANTS Delaware Omaha's motion for
summary judgment on this final issue of injunctive relief.

## V.    CONCLUSION

In sum, the undisputed material facts in this case show that Delaware Omaha is entitled to summary judgment on its injurious falsehood claim, because the Defendants made false statements about their ownership of the Properties with malice, and Delaware Omaha has suffered special damages due to the Defendants' tortious conduct.  The undisputed material facts also show that Delaware Omaha is entitled to summary judgment on its intentional interference with prospective economic advantage claim, because the Defendants intentionally and willfully made and communicated false statements about their ownership of the Properties for the unlawful purpose of damaging Delaware Omaha's business, and Delaware Omaha has suffered significant financial damages as a result.  The undisputed material facts similarly show that Delaware Omaha is entitled to summary judgment on its civil conspiracy claim, because the Defendants entered into an unlawful agreement to commit these torts, thereby hindering Delaware Omaha's business.

In addition, the unrebutted evidence shows that Delaware Omaha is entitled to recover actual, special and punitive damages from the Defendants for committing these tortious acts.  Lastly, the unrebutted evidence also shows that Delaware Omaha is entitled to the injunctive relief that it seeks in this matter.  And so, for the foregoing reasons, the Court:

(1) **GRANTS** Delaware Omaha's motion for summary judgment and permanent injunction (ECF No. 163);

(2) **AWARDS** Delaware Omaha special damages in an amount to be determined by the Court;

(3) **AWARDS** Delaware Omaha punitive in an amount to be determined by the Court;

(4) **ENTERS** a **PERMANENT INJUNCTION** enjoining the Defendants from:

(a) filing any fraudulent deeds asserting ownership or transfer of ownership relating to properties that are lawfully owned by Delaware Omaha;

(b) making any public misrepresentation that the Defendants have any interest in the properties lawfully owned by Delaware Omaha;

(c) entering or coming within 100 yards of the premises of any properties lawfully owned by Delaware Omaha;

(d) listing any of the properties lawfully owned by Delaware Omaha for sale; and

(e) renting to and/or installing tenants in any of the properties lawfully owned by Delaware Omaha;

(5) **DENIES-as-MOOT** Defendant Mustafa's motion for leave to file a response and statement of undisputed facts (ECF No. 174);

(6) **DENIES-as-MOOT** Defendant Raji's motions to dismiss (ECF No. 195); and

(7) **DENIES-as-MOOT** Defendant Raji's motion to stay pending appeal (ECF No. 196).


A separate Order shall issue.


**IT IS SO ORDERED.**


s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge